BURLINGTON INSURANCE CO., Plaintiff v. THE FISHERMANS BASS CIRCUIT, INC. a/k/a THE FISHERMAN'S BASS CIRCUIT, INC. and JERRY RHYNE, Defendants

No. COA03-1231

(Filed 20 July 2004)

**1. Civil Procedure— summary judgment—supplemental affidavit**

The trial court did not abuse its discretion by allowing the submission of a supplemental affidavit during a summary judgment hearing where the supplemental affidavit was in response to allegations made for the first time in an affidavit received the afternoon before the hearing and the supplement contained only six additional sentences, which specifically rebutted the affidavit received the day before the hearing.

**2. Insurance— existence of exclusion—question of fact**

The trial court erred by granting summary judgment for plaintiff insurer in a declaratory judgment action to determine insurance coverage where plaintiff had submitted affidavits averring that a policy endorsement excluded coverage and defendants submitted an affidavit in opposition.

BURLINGTON INS. CO. v. FISHERMAN'S BASS CIRCUIT, INC.

[165 N.C. App. 439 (2004)]

Appeal by defendants from judgment entered 30 April 2003 by Judge Marcus L. Johnson in Lincoln County Superior Court. Heard in the Court of Appeals 26 May 2004.

*Pendleton & Pendleton, P.A., by Wesley L. Deaton, for defendants-appellants.*

*Whiteside & Walker, L.L.P., by Nancy E. Walker and Michael Kemper, for plaintiff-appellee.*

ELMORE, Judge.

In this appeal, we must determine whether the trial court erred by granting summary judgment in favor of Burlington Insurance Co. (plaintiff) in its declaratory judgment action against The Fishermans Bass Circuit, Inc., a/k/a the Fisherman's Bass Circuit, Inc., and Jerry Rhyne (collectively, defendants). For the reasons stated herein, we reverse the judgment and remand this matter to the trial court.

The facts giving rise to the present appeal are as follows: defendant Fishermans Bass Circuit, Inc. (FBC) is a North Carolina corporation which operates and conducts fishing tournaments throughout the Southeast. Defendant Jerry Rhyne (Rhyne) is FBC's president. On 6 June 1999, while FBC was conducting a tournament in Alabama, a bass boat operated by a participant in the tournament struck a houseboat occupied by Eldridge and Bobbie Loudermilk, two non-participants in the tournament, killing Eldridge Loudermilk and injuring Bobbie Loudermilk. On 8 June 2000, Bobbie Loudermilk filed a civil action in the Marshall County Circuit Court, Marshall County, Alabama, seeking damages against, *inter alia*, defendants. Larry J. Baker, a passenger in the bass boat which struck the Loudermilks and also a participant in the tournament, subsequently filed a separate action in Alabama against, *inter alia*, defendants.[1]

Plaintiff initially provided a defense, under a reservation of rights, for defendants in the Alabama lawsuits, pursuant to the terms of a commercial general liability insurance policy issued by plaintiff in favor of defendants. However, on 20 July 2002 plaintiff filed the declaratory judgment action underlying this appeal, alleging that it had no obligation under the policy to provide coverage for defendants. In support of its allegations, plaintiff averred that defendants

---

1. We shall hereinafter refer to the Loudermilk and Jackson lawsuits collectively as the "Alabama lawsuits."

BURLINGTON INS. CO. v. FISHERMAN'S BASS CIRCUIT, INC.

[165 N.C. App. 439 (2004)]

"are not entitled to either a defense or coverage under the Policy for the reason that the occurrence giving rise to the claims in question is specifically excluded from coverage by Policy Endorsement BG-G-074 492." A copy of this endorsement was attached to plaintiff's complaint and read in pertinent part as follows:

1. This insurance does not apply to:

   a. "bodily injury," "personal injury," or "advertising injury"

      (1) arising out of any mechanical amusement rides, batting cages, dunk tanks, moonwalks, trampolines, animal rides, aircraft, *watercraft*, . . .;

      . . .

      (4) To any person while practicing, instructing, demonstrating, or participating in . . . any type of sport or athletic activity or *contest*.

      . . .

   b. "property damage"

      (1) To any vehicle while practicing for *or participating in any contest*;

      . . . . (emphasis added).

In their answer, defendants admitted that plaintiff issued to them a commercial general liability insurance policy, and denied that they were not entitled to a defense under this policy. Defendants specifically "aver[red] that plaintiff is barred by latches and estoppel from proceeding with this declaratory judgment action because plaintiff, through its agents, bound the plaintiff and agreed with the defendants to provide coverage" for the incident which gave rise to the Alabama lawsuits. Defendants pled in their answer that "the terms of the Policy and provisions of the Policy speak for themselves[,]" but did not specifically plead that Policy Endorsement BG-G-074 492 was not part of the policy, that defendants had no notice of the endorsement, or that any terms of the policy were ambiguous.

Plaintiff took no further action in this matter until 16 April 2003, when it filed a motion for summary judgment and three affidavits in support thereof. Plaintiff's first supporting affidavit was executed by

Jerry Dellinger (Dellinger), an insurance agent employed by East Lincoln Insurance Agency. Dellinger stated in his affidavit that in 1995, at Rhyne's request and while acting as a retail agent for defendants, he "contacted Jackson Sumner & Associates, the agent for [plaintiff], and was able to obtain coverage for [defendants]." Dellinger's affidavit stated as follows regarding the policy he procured for defendants:

5. The 1995 policy was written as spectator liability only and covered property damage and/or personal injuries sustained in the exercise of [defendants'] administrative functions during the tournament events and did not cover acts by tournament participants and others on the water.

6. [Defendants] renewed the policy each year since 1995.

7. Rhyne made no request to change his coverage for the 1999 policy and never asked to add coverage for participants or other persons arising out of the use of watercraft.

Plaintiff's second supporting affidavit was executed by Frank Dent, III, plaintiff's vice president. Dent stated in his affidavit that "the occurrence giving rise to the [Alabama lawsuits] is specifically excluded from coverage by Policy Endorsement BG-G-074 492." Dent's affidavit also stated that no one in his office communicated with any representative of defendants regarding purchase of the policy in question, and that plaintiff "has no relationship whatsoever with East Lincoln Insurance Agency or with Jerry Dellinger and they have no authority whatsoever to make representations on behalf of [plaintiff]."

Plaintiff's third supporting affidavit was executed by Wayne L. Sumner (Sumner), owner of Jackson Sumner & Associates, an authorized wholesale agent for plaintiff. Sumner's affidavit stated that his office was "contacted in 1995 by [Dellinger] . . . the retail agent for [defendants]," and that the resulting "1995 policy was written as requested by Dellinger, and was renewed on a yearly basis." Regarding the policy written by plaintiff, Sumner's affidavit stated as follows:

4. The 1995 policy provided by [plaintiff] covered property damage and/or bodily injuries sustained in the exercise of [defendants'] administrative functions during the tournament events

and expressly excluded acts by tournament participants and others on the water.

. . .

6. The 1999 policy in effect at the time of the accident in this case provided the same coverage for property damage and/or bodily injuries as Burlington's 1995 through 1998 policies.

On 23 April 2003, in opposition to plaintiff's summary judgment motion, defendants filed an affidavit executed by Rhyne. Plaintiff's counsel received Rhyne's affidavit by mail on Friday, 25 April 2003, one business day prior to the hearing on plaintiff's motion, which had been noticed for Monday, 28 April 2003. Rhyne's affidavit alleged that Dellinger represented himself to be an agent of *plaintiff*, rather than defendants; that when Rhyne spoke with Dellinger in 1995 about procuring an insurance policy for defendants, Rhyne emphasized to Dellinger that defendants needed coverage for boating accidents; and that Dellinger told Rhyne he would provide such a policy. Regarding Policy Endorsement BG-G-074 492, Rhyne's affidavit stated as follows:

10. I have never before been given, told of or heard of the endorsements described in the Plaintiff's complaint, to which Plaintiff makes reference in its Motion for Summary Judgment. I further contend that I would not ever have agreed to this modification of my liability policy.

11. . . . I would never have agreed to a policy change, and did not agree to a policy change, that would have effectively nullified the protection of which I had requested from Jerry Dellinger.

On 28 April 2003, plaintiff's motion for summary judgment came on for hearing. At the hearing, defendants argued that Rhyne's affidavit created "a genuine issue of material fact as to whether . . . Dellinger, who sold the policy to [defendants], . . . is an agent under the terms of the law for [plaintiff]," such that Dellinger, by making representations to Rhyne as alleged therein, "has bound the plaintiff to coverage." Defendants also argued that Rhyne's affidavit created a second genuine issue of material fact, that being whether Policy Endorsement BG-G-074 492 was ever agreed to by defendants or ever delivered to defendants. Plaintiff's counsel responded by noting that she received Rhyne's affidavit in the mail one business day before the

BURLINGTON INS. CO. v. FISHERMAN'S BASS CIRCUIT, INC.

[165 N.C. App. 439 (2004)]

hearing, and that Rhyne therein averred, for the first time, that Policy Endorsement BG-G-074 492 was not part of the insurance policy at issue and that he had no notice of its existence. In response to these averments, plaintiff's counsel procured a supplemental affidavit from Sumner late on the afternoon of the last business day before the hearing, which she tendered to the trial court during the hearing. The trial court received Sumner's supplemental affidavit over defendants' objection. Sumner's supplemental affidavit stated in pertinent part as follows:

3. The 1995 policy issued by [plaintiff] to [defendants] included Endorsement BG-G-074 492.

4. [Plaintiff's] 1995 policy was renewed by [defendants] each year through their agent, Jerry Dellinger, and always included Endorsement BG-G-074 492.

6. [sic] For each renewal of coverage, Jackson Sumner & Associates physically mailed to Jerry Dellinger, the agent for [defendants], two complete copies of the insurance policy . . . . Endorsement BG-G-074 492 was included in each of the policies sent to Jerry Dellinger's office each year.

7. The 1999 policy in effect at the time of the accident in this case contained Endorsement BG-G-074 492 as did all of policies issued to [defendants] since 1995.

Thereafter, by order entered 30 April 2003, the trial court concluded "that there are no genuine issues of any material fact[] and . . . that the policy does not provide coverage for claims arising out of the Alabama boating accident[,]" and granted plaintiff's motion for summary judgment. From this order, defendants appeal.

[1] By their first assignment of error, defendants contend the trial court abused its discretion by allowing plaintiff to submit Sumner's supplemental affidavit during the hearing on plaintiff's summary judgment motion, despite the fact that the affidavit was not served upon defendants prior to the hearing. Defendants argue plaintiff's failure to serve the affidavit prior to the day of the hearing constitutes reversible error. We disagree.

This Court has stated that "[a]lthough affidavits in support of a motion for summary judgment are required by G.S. 1A-1, Rules 6(d)

BURLINGTON INS. CO. v. FISHERMAN'S BASS CIRCUIT, INC.

[165 N.C. App. 439 (2004)]

and 56(c) to be filed and served with the motion, Rule 56(e) grants to the trial judge wide discretion to permit further affidavits to supplement those which have already been served." *Rolling Fashion Mart, Inc. v. Mainor*, 80 N.C. App. 213, 216, 341 S.E.2d 61, 63 (1986) (citing *Nationwide Mut. Ins. Co. v. Chantos*, 21 N.C. App. 129, 203 S.E.2d 421 (1974)); *see also Chaplain v. Chaplain*, 101 N.C. App. 557, 560, 400 S.E.2d 121, 122 (1991) ("The provision requiring service of materials before a hearing for summary judgment is not inviolable. Unserved materials are receivable within the court's discretion.")

In the present case, plaintiff submitted Sumner's supplemental affidavit to rebut assertions made, for the first time, in Rhyne's affidavit that Policy Endorsement BG-G-074 492 was not part of the insurance policy at issue and that Rhyne had no notice of its existence. Plaintiff's counsel received Rhyne's affidavit on the afternoon of the last business day prior to the summary judgment hearing. When plaintiff tendered Sumner's supplemental affidavit during the hearing, the trial court received it "as a rebuttal to an allegation that was not previously made." Sumner's supplemental affidavit contained only six sentences which were not present in his original affidavit, and these six sentences specifically rebutted Rhyne's affidavit by stating that the 1995 policy contained Policy Endorsement BG-G-074 492, as did all subsequent renewals thereof, each of which was mailed to Dellinger as defendants' agent. On these facts, we discern no abuse of discretion in the trial court's admission or consideration of Sumner's supplemental affidavit.

[2] By their second assignment of error, defendants contend the trial court erred in granting plaintiff's motion for summary judgment because a genuine issue of material fact existed as to whether Policy Endorsement BG-G-074 492 was part of the contract of insurance upon which plaintiff and defendants agreed.[2] We find defendants' argument on this point persuasive.

---

2. We note that defendants have set forth two assignments of error in the record on appeal: assignment of error number one, by which defendants except to admission of Sumner's supplemental affidavit, and assignment of error number two, which by which defendants except to the trial court's grant of summary judgment "on the basis that the Defendants' pleadings, affidavits and other testimony show there to be a genuine issue of fact as to whether the Defendants agreed to, consented to or even knew of a modification in their insurance contract excluding the insurance coverage at issue." We are not persuaded by plaintiff's assertion that defendants, by either the wording of their second assignment of error or the arguments advanced in their brief, have failed to preserve this issue for appeal pursuant to N.C.R. App. P. 10(a).

In a declaratory judgment action, summary judgment is properly granted "where 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law.' " *Williams v. Blue Cross Blue Shield of N.C.*, 357 N.C. 170, 178, 581 S.E.2d 415, 422 (2003) (quoting N.C. Gen. Stat. § 1A-1, Rule 56(c) (2003)). Our Supreme Court has stated that " 'an issue is genuine if it is supported by substantial evidence,' which is that amount of relevant evidence necessary to persuade a reasonable mind to accept a conclusion," *Liberty Mut. Ins. Co. v. Pennington*, 356 N.C. 571, 579, 573 S.E.2d 118, 124 (2002) (citations and internal quotation marks omitted). Further, "an issue is material if the facts alleged would constitute a legal defense, or would affect the result of the action, or if its resolution would prevent the party against whom it is resolved from prevailing in the action." *Koontz v. City of Winston-Salem*, 280 N.C. 513, 518, 186 S.E.2d 897, 901 (1972). In order to defeat a motion for summary judgment, the nonmoving party "must by affidavit, or other means provided in the Rules, set forth specific facts showing a genuine issue of fact for the jury; otherwise, 'summary judgment, if appropriate, shall be entered against [the nonmoving party].' " *In re Will of McCauley*, 356 N.C. 91, 101, 565 S.E.2d 88, 95 (2002) (quoting N.C. Gen. Stat. § 1A-1, Rule 56(e)). "When considering a motion for summary judgment, the trial judge must view the presented evidence in a light most favorable to the nonmoving party." *Dalton v. Camp*, 353 N.C. 647, 651, 548 S.E.2d 704, 707 (2001).

In the present case, plaintiffs moved for summary judgment on the grounds that Policy Endorsement BG-G-074 492 excluded plaintiff from liability for acts committed by participants and others arising from the use of watercraft during fishing tournaments conducted by defendants. In support of its motion, plaintiff submitted affidavits averring that defendants' insurance policy included Policy Endorsement BG-G-074 492 and therefore covered only losses arising from defendants' "administrative functions during the tournament events and expressly excluded acts by tournament participants and others on the water[,]" and that Dellinger had no authority to make any contrary representations to plaintiff.

Defendants submitted the affidavit of Rhyne in opposition to plaintiff's motion for summary judgment. Rhyne avers therein that (1) Dellinger represented himself to be an agent of plaintiff; (2) Rhyne related to Dellinger the nature of defendants' business and told

Dellinger that he "wanted a liability policy . . . for protection from boating liability[;]" (3) Dellinger assured Rhyne that he could provide such a policy; (4) Rhyne read the original 1995 policy, and it did not contain Policy Endorsement BG-G-074 492; and (5) Rhyne never received notice of any subsequent addition of Policy Endorsement BG-G-074 492 to the policy.

On these facts, we conclude that defendants have carried their burden of setting forth specific facts showing a genuine issue of material fact for the jury as to whether the contract for insurance agreed upon by the parties included Policy Endorsement BG-G-074 492. Consequently, we reverse the trial court's grant of summary judgment in plaintiff's favor and remand to this case to the trial court for further proceedings.

Reversed and remanded.

Judges McGEE and McCULLOUGH concur.